UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    v. )<br>)<br>BONNY L. REYNOLDS, )<br>)<br>    Defendant. ) | Crim. No. 7-86-B-W |

**RECOMMENDED DECISION**

This matter is before me on a motion to suppress that was filed on March 12, 2008, and referred on April 15, 2008. On May 14, 2008, I ordered a psychological evaluation be performed upon the defendant. On June 30, 2008, I received a report from the evaluator suggesting that Ms. Reynolds was not currently competent to stand trial because of her inability to properly assist in the preparation of her defense. On July 10 a hearing on the issue of competence was held before me and I now recommend that the court find the defendant incompetent to proceed at the present time and commit her in accordance with the proposed order attached to this recommended decision.

**Background Information**

Bonny Reynolds was charged by indictment returned December 11, 2007, with one count of possession of firearms after having been committed to a mental institution in violation of 18 U.S.C. § 922(g)(4) and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). The events giving rise to the charges were alleged to have occurred on or about May 2, 2006. On February 15, 2008, Bonny L. Reynolds was arrested and appeared before me for an initial appearance on the Government's motion for detention.

Counsel was appointed to represent her and the matter was continued until February 19, 2008, for a detention hearing and arraignment on the indictment. Reynolds was temporarily detained. On February 19 I denied the Government's motion for detention and released Reynolds on conditions. Following arraignment I entered an order in respect to discovery and set a deadline for filing of pretrial motions. On February 26, 2008, the Government filed a motion to revoke pretrial release based upon Reynolds' failure to report as required. Reynolds was promptly arrested and appeared before me on February 28, 2008, for a hearing on the motion to revoke. Following hearing I again released Reynolds on amended conditions of release. During her appearances before me Ms. Reynolds was somewhat belligerent and agitated, but I had no reason to question her competence to understand the nature and consequences of the proceedings. Counsel did not then raise any issue regarding her ability to properly assist in her own defense.

Pursuant to the pretrial motion deadline, the motion to suppress was filed on March 12, 2008. On April 3, 2008, the Government filed a motion for revocation of order of release and for detention or modification of conditions of release. That motion was set for hearing in conjunction with the motion to suppress hearing scheduled for April 29, 2008. Reynolds did not appear for the hearings. An arrest warrant issued and she was brought before the court in custody on May 1, 2008. I ordered pretrial release revoked following a hearing and the defendant has been detained since that date. Her defense counsel requested the motion to suppress be held in abeyance because he intended to file a motion for a competency evaluation based upon Reynolds' most recent conduct. In fact the Government filed such a motion on May 2, 2008. Defense counsel responded on May 13, 2008, requesting that I order the examination be done locally by an independent psychologist who had experience as a State of Maine forensic examiner and who had previously performed numerous competency evaluations. I held a

conference of counsel on May 14, 2008, and I ordered that a competency evaluation be performed by Diane A. Tennies, Ph.D., LADC of Bangor, Maine, to be completed and filed with the court by June 30, 2008.   I ordered the local evaluation in part because of recent cases where it has taken over three weeks for the Bureau of Prisons to designate a facility and transport a female prisoner to that facility before the examination could even begin.  On June 30, 2008, I received the report suggesting that Reynolds was not competent to proceed because her mental illness currently rendered her unable to assist properly in her own defense.  A competency hearing was held on July 10, 2008, with Diane A. Tennies and Bonny L. Reynolds both presenting testimony.

### The Competency Standard

"[T]he criminal trial of an incompetent defendant violates due process."  Medina v. California, 505 U.S. 437, 453 (1992).  This hearing arises under 18 U.S.C. § 4241, which provides in relevant part:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Id. § 4241(a).  If, after a hearing, the Court concludes by a preponderance of the evidence that the defendant is not competent to stand trial, the Court "shall commit the defendant to the custody of the Attorney General," who "shall hospitalize the defendant for treatment in a suitable facility."  Id. § 4241(d).  Thereafter, within a reasonable time not to exceed four months, it must be addressed whether there is a substantial probability that the defendant will become competent

3

"in the foreseeable future" for purposes of standing trial.  Id.  Competency consists of a "present ability to consult with [a] lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings.'"  Dusky v. United States, 362 U.S. 402, 402 (1960) (*per curiam*).  It is a necessary finding that the defendant have the mental capacity to consult with counsel to assist in the preparation of a defense.  Drope v. Missouri, 420 U.S. 162, 171 (1975).  The burden of persuasion by a preponderance of the evidence rests with the government.  United States v. Thomas, 519 F. Supp. 2d 135, 139 (D. Me. 2007) ("Absent controlling precedent from the Supreme Court and direct guidance from the First Circuit, the Court concludes that the burden rests on the government to demonstrate that the defendant is competent.")

## Proposed Findings of Fact and Conclusion of Law

Diane A. Tennies is licensed by the State of Maine as an alcohol and drug counselor and she also practices forensic and clinical psychology.  She has testified in child protective proceedings and criminal competency hearings in the state courts.  Dr. Tennies has performed over 30 competency evaluations for the State of Maine.  Her evaluation of Reynolds was based upon the data and impressions she acquired during a three and one-half hour interview with Reynolds at the Two Bridges Regional Jail in Wiscasset, Maine, the information she was able to obtain from police reports and records, medical records from Acadia Hospital in Bangor, Maine and, following preparation of the report, medical records subsequently obtained from Sebasticook Family Practice in Newport, Maine.  Tennies also interviewed Viola Hutchins, Reynolds' mother, and obtained additional history.  However, Tennies admitted that she had no independent verification of the information provided by Hutchins regarding Reynolds level of functioning when she was living in the community.  Tennies's report details her conclusions

following the mental exam and I incorporate those findings into these proposed findings as neither party challenged her testimony.  A copy of the actual report will be filed separately under seal.

      During her testimony Dr. Tennies made some additional observations.  Even though Tennies is not a psychiatrist she did offer her opinion that the Acadia diagnosis at the time of discharge on April 3, 2006, suggesting Bipolar Disorder might be in error and that Reynolds may suffer from a Schizo-Affective disorder which is much more intractable and difficult to treat with a medication regime than is a Bipolar Disorder.   Tennies also questioned the decision of the medical staff at the jail who had prescribed rimeron approximately two weeks ago to treat Reynolds's increasing depression.  Reynolds had requested St. John's Wort as her treatment of choice for depression and that was first tried but was unsuccessful in alleviating the increased symptoms.  Tennies found the choice of rimeron "surprising" because it is an antidepressant and most commonly is prescribed in conjunction with a mood stabilizer when dealing with someone with a Bipolar Disorder.  In any event, based upon my own observations at the hearing, there is no reason to believe that Reynolds's condition has improved any from the condition described by Tennies as of her June 4, 2008, examination.  I would not make any findings regarding the proper diagnosis for Reynolds or the proper medication regime.  However, I accept Tennies testimony that Reynolds needs to have a medical regime that is regularly monitored for compliance in order to improve her level of functioning.  I also agree with Tennies that Reynolds's incarceration has not improved her mental health and that she appears less focused and alert than she did at the earlier hearings.

      The findings regarding Reynolds's competence to stand trial are very difficult to make based on this record.  Clearly Reynolds understands the nature and consequences of the

proceedings.  Tennies's report supports that finding and my own observations corroborate that Reynolds knows who the principal actors in the courtroom are, how proceedings are conducted, and what the consequences of these proceedings might be in a general sense.  ("I don't know the sentencing guidelines except Jeff said if I plead guilty I get up to ten years and if I am found guilty then I get up to ten years so there is no reason for me to plead guilty and I did not do it.  I was helping people by taking those guns.")  A cognitive ability to understand the essentials of the criminal justice system certainly exists.

      The problem, in my view, is two-fold.  First Reynolds's period of incarceration with no medication and/or psychological counseling has caused her mental condition to deteriorate.  According to Viola Hutchins her daughter never spoke about being "gifted" or communicating with the dead until the current incarceration.  This topic has now become a preoccupation with Reynolds because she testified on the stand that she does communicate with the dead and that she has a gift of foreseeing when someone important to her might be in danger.   It is easy to see that her preoccupation with the voices she hears and the abuse she believes she is suffering at the hands of "lesbian guards" in the jail interferes with her ability to assist properly in her own defense.   As Dr. Tennies testified, these preoccupations, which appear to be the product of her mental illness, interfere with her ability to logically process the information she is given.  Thus, even though Reynolds knows the maximum sentence for this offense is 10 years and that she could theoretically receive that sentence whether she goes to trial or pleads guilty, her mental condition prevents her from focusing on the benefits and detriments of pursuing one course of action over the other.  In these circumstances she can't assist her counsel in the preparation of a defense.  It also seems that she is unable to intelligently relate the events and circumstances of her arrest and why she found herself to be in possession of the firearms.

The second problem presented by this evidence is that Dr. Tennies acknowledged that some of these characteristics are not only the result of Reynolds's illness but are also personality disorders or even personality "features" that are persistent and will make her assistance in preparation of her defense difficult under the best of circumstances. That fact alone does not render her incompetent to stand trial. She has a lengthy history of poor decision making, impulsivity, and paranoid behavior. Even when she was functioning at a reasonable level in the community she was preoccupied with certain issues, such as her dissatisfaction with having a designated representative payee instead of receiving her disability payments directly from the government.

In this case the Government has not challenged Dr. Tennies's opinion and does not attempt to argue, at least at this juncture, that Reynolds has the ability to properly assist in her defense. I agree with the Government's assessment, in that based primarily on Reynolds's own testimony at the hearing it appears she lacks the capacity to properly assist with her defense.

According to Reynolds's mother and the discharge summary from Acadia Hospital, Reynolds has historically responded very well to psychopharmacological interventions and there is every reason to believe that if she were to receive the proper care and treatment she could become competent to assist properly in her defense in relatively short order. It is conceivable that further psychiatric examination and treatment in a controlled setting may result in other examiners, including a psychiatrist, concluding that Reynolds does have the capacity to assist in her defense. It may even develop that a relatively short stay in a medical facility with a monitored and proper medication regime will result in Reynolds's condition quickly improving to the point where she could stand trial. However, at the present time I find that as a result of mental illness she is unable to properly assist with her defense.

NOTICE

  A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

          /s/ Margaret J. Kravchuk
          U.S. Magistrate Judge

Date  July 10, 2008